In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3216

DAVID CONRAD,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 4343 — **Amy J. St. Eve**, *Judge.*

ARGUED DECEMBER 15, 2015— DECIDED MARCH 4, 2016

Before BAUER, POSNER, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal is from the denial of the defendant's motion to vacate his sentence under 28 U.S.C. § 2255 on the ground that *Peugh v. United States*, 133 S. Ct. 2072 (2013), forbids subjecting a criminal defendant to an increase in his guidelines sentencing range made by the Sentencing Commission after the defendant had committed the crime for which he is being sentenced. When the defendant in the present case was sentenced, the guidelines range

applicable to his multiple violations of the federal laws relating to child pornography was 360 months to life; the judge sentenced him to 198 months, and we affirmed the conviction and sentence in *United States v. Conrad*, 673 F.3d 728 (7th Cir. 2012). Yet under the version of the guidelines in force years earlier, when the defendant had committed the crimes for which he was convicted, the guidelines range had been only 121 to 151 months.

*Peugh* was decided five months after the defendant's conviction and sentence became final, and consistently with 28 U.S.C. § 2255(f)(3) he filed his section 2255 petition exactly one year after the decision in *Peugh*, which he cites for the proposition that a sentence influenced by a guidelines range promulgated after a defendant committed the offense of which he's been convicted violates the ex post facto clause — Art. I, § 9, cl. 3 of the U.S. Constitution for federal prosecutions, Art. I, § 10, cl. 1 for state prosecutions. So *Peugh* held. The question presented by this case is whether *Peugh* applies retroactively, and thus to the sentence meted out to the defendant in our case on the basis of the guidelines range in force when the district judge sentenced him — a range having a higher ceiling than the range in force when he committed the crime.

The Supreme Court hasn't said whether *Peugh* applies retroactively. *Peugh* itself is equivocal, stating on the one hand that errors in calculating a guidelines range are "procedural" but on the other hand that the ex post facto clauses forbid government "to enhance the measure of punishment by altering the substantive 'formula' used to calculate the applicable sentencing range." 133 S. Ct. at 2080, 2083, 2088. The formula referred to is the guidelines, which create a sen-

tencing range that though not mandatory is highly influential. Elsewhere in the opinion we read that the guidelines are "the lodestone of sentencing," that "sentencing decisions are anchored by the Guidelines," and that as a practical matter, though not required by law, "when a Guidelines range moves up or down, offenders' sentences move with it." *Id*. at 2083, 2084.

The significance of the reference in *Peugh* to "procedural" errors is that in the Court's view a practice declared after the sentence in a case becomes final to be a procedural error, in contrast to one declared to be a substantive error, does not justify resentencing unless the rule that declared the practice erroneous was a "watershed" rule. See, e.g., *Whorton v. Bockting*, 549 U.S. 406, 417–20 (2007); *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004). The defendant in our case does not argue that the prohibition on sentences influenced by increases in the guidelines range after the defendant committed the crime for which he is being sentenced is such a "watershed" rule. He could not make such an argument with a straight face given that neither *United States v. Booker*, 543 U.S. 220 (2005), which made the Sentencing Guidelines discretionary, nor *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which required that facts affecting mandatory minimum sentences must be proved to a jury beyond a reasonable doubt, have been deemed retroactive, *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005); *Crayton v. United States*, 799 F.3d 623 (7th Cir. 2015), even though both *Booker* and *Alleyne* were very important decisions. The Supreme Court has declared only one procedural decision to be a "watershed": *Gideon v. Wainwright*, 372 U.S. 335 (1963)—the famous decision that held that the defendant in a criminal case has a constitutional right to counsel. So for the defendant to pre-

vail in this case he must first convince us that *Peugh*'s rule was substantive rather than procedural.

The attempt to distinguish between a substantive and a procedural rule is not a happy one, at least in the present context, because most procedural rules have substantive effects. The right to counsel in a criminal case, the requirement of proof beyond a reasonable doubt to convict, the right of allocution, the right to cross-examine, the right of self-representation—these are all procedural rules, but they have profound substantive effects, which is why they doubtless are "watershed" rules and therefore criminal defendants can invoke them retroactively. But rules altering permissible sentence length are *explicitly* substantive even when the sentencing judge is not required to impose the higher or lower sentence permitted by the new rule. When Congress increases the maximum punishment for some crime there is no effect on sentencing procedures—the submission of a presentence report prepared by the probation service, the lawyers' arguments and maybe a witness's statement, the judge's questioning, the allocution, the judge's statement of the sentence and of the defendant's right to appeal (unless waived). So a change in the permissible length of a sentence is not procedural. The change does not affect the sentencing process but only the sentencing result—the length of the sentence, which is a matter of substance no less than the verdict is.

It's true that a change in the guidelines range does not alter the range of permissible sentences, because the judge doesn't have to sentence within the applicable guidelines range; yet the average length of sentences for the crime in question is, as noted in *Peugh*, likely to rise as a result of an increase in that range. To call an increase in sentence length,

however effectuated, "procedural" seems a misuse of the word. But although the increase in the guidelines range of which the defendant complains both seems substantive and postdated his crime, we don't think he's entitled to be resentenced.

In the first case in which the Supreme Court considered the scope of the ex post facto clause, *Calder v. Bull*, 3 Dall. (3 U.S.) 386 (1798), Justice Samuel Chase explained that the following retrospective applications of law are prohibited by it: "1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." *Id*. at 390. What the Sentencing Commission did when it increased the guidelines range for the defendant's crime in this case *could* be thought encompassed by Justice Chase's second and third points, but that is not an inevitable conclusion. The principal objection to ex post facto laws—the first in Justice Chase's list—is that they punish the defendant, without warning, for conduct that he rightly considered lawful when he engaged in it. The objection to increasing retroactively the punishment for conduct clearly criminal when the defendant engaged in it is different—it is that the decision whether to comply with a criminal law is normally based on a comparison of the gains and losses of violating the law, and the losses depend on the expected sentence if the criminal is caught. Imposing an un-

foreseen heavier punishment retroactively distorts the ability of a potential criminal to make a rational choice. He could complain: "if only you had warned me of the consequences, I would not have committed the crime." One could imagine the defendant in this case saying that, though he hasn't done so.

But it is a safe bet that it is the rare would-be criminal who consults the guidelines tables published by the Sentencing Commission in deciding whether to commit a crime. It would be a futile search. He could not calculate with any confidence where in the applicable range he would be punished if convicted, or indeed whether he would be punished within the range instead of more severely or less so by a sentence above or below the range. The top of the range when our defendant committed his crime was 151 months, but when he was sentenced it was life, and he was sentenced to 198 months—four years more than the guidelines ceiling when he committed the crime, though within the statutory maximum and therefore within the limits of his anticipation. While *Peugh* holds that an "increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation," 133 S. Ct. at 2084, it makes a difference when the increase in the guidelines range takes place. If as in the present case it was before *Peugh* was decided, the concern with overburdening the courts with postconviction litigation has controlling weight because, the guidelines not being binding on the sentencing judge, the defendant—provided that the judge does not impose a sentence higher than the *statutory* maximum when he committed his crime—does not "face a punishment that the law cannot impose upon him." *Schriro v. Summerlin, supra*, 542 U.S. at 352; see also *Montgomery v. Louisiana*, 136 S. Ct.

718, 729–30, 734 (2016). As explained in a case comparable to this one, *Hawkins v. United States*, 724 F.3d 915, 919 (7th Cir. 2013), "fairness to victims of errors in guidelines calculation that might or might not have lengthened a sentence (or shortened it for that matter, thus conferring a windfall on the defendant) must be balanced against the harm to victims of judicial delay brought about by judges' neglect of the social interest in judicial finality." See also *Teague v. Lane*, 489 U.S. 288, 310 (1989).

To summarize: The defendant committed a crime. But before sentencing, the applicable guidelines range was increased and the new range was used in his sentencing, with the likely (though not certain, since sentencing within the applicable guidelines range is not mandatory) effect of a heavier sentence than if the old range had been used instead. Then comes *Peugh*; and considerations of finality persuade us that it should not apply retroactively. The sentence was within the statutory range and was thus a sentence that the judge was constitutionally permitted to give both before and after *Peugh*. *Peugh* does not require that the defendant be resentenced.

AFFIRMED